795 So.2d 237 (2001)
Arnell WAITS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2708.
District Court of Appeal of Florida, Fifth District.
September 28, 2001.
James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
PLEUS, J.
The appellant, Arnell "Gator" Waits, was convicted of two counts of aggravated battery, one count of aggravated assault and one count of false imprisonment for actions he took against a woman he thought had taken his money. He challenges the denial of his motions for judgments *238 of acquittal as to one of the aggravated battery convictions and the false imprisonment conviction. We agree with his arguments on these points, affirm his other convictions, and remand for resentencing.[1]
On April 22, 2000, at approximately 11:30 in the morning, Officer Regis McCue of the Kissimmee Police Department responded to a call about a disturbance. When McCue arrived at the scene, he saw the victim, April Salley standing by a fence, crying. Eight to 10 feet away from Salley was Waits. Salley told the officer that Waits had "hit me and cut me orshe was saying all kinds of stuff at the time, just real irate." McCue observed that Salley had small lacerations on her upper thigh and a small cut on her forehead.
McCue took a statement from the manager of a nearby U-Haul business. U-Haul manager Lance Beesley testified that he observed a black man pinning down two women. Beesley testified that the man was accusing them of taking his money. At first, the man did not use a knife, but in the middle of the altercation, he pulled one out and threatened to use it. At some point, the man waved an Hispanic male over to the two women and then pulled the Hispanic male to the ground. Beesley did not see the black male strike anyone with the knife but he did see the knife "go towards the two girls."
The victim, April Salley, testified that she was "hanging out" the morning of April 22 when Waits, known to her as "Gator," hit her over the head with what she thought was a bicycle pump. Waits proceeded to pin her against the fence and hit her. He then pulled out a knife and cut her on her leg and her arm with the knife.
Waits' conviction for aggravated battery based on his use of the bicycle pump as a weapon is not being challenged in this appeal. The aggravated battery conviction that Waits does challenge involves the fact that while Salley provided some testimony of the knife being used to cut her, she was uncertain as to how she was wounded by the knife. When presented with a photograph of her injuries, Salley was unable to state which of the marks on her thigh were from falling down and which were from the knife. In C.A.C. v. State, 771 So.2d 1261, 1262 (Fla. 2d DCA 2000), the court noted that while the issue of great bodily harm is a question of fact, "the state must prove more than that the victim suffered some harm." Evidence of great bodily harm was not presented in the instant case.
Moreover, and more importantly, the jury specifically found that the knife was not used as a deadly weapon in the battery. With respect to this alleged aggravated battery, the state charged that Waits:
did, in violation of Florida Statute 784.045(1)(a)2., knowingly commit a battery upon APRIL SALLEY, and in furtherance thereof, did actually and intentionally touch or strike APRIL SALLEY against the will of APRIL SALLEY or did intentionally cause bodily harm to APRIL SALLEY, and in the commission of said battery, ARNELL WAITS also known as GATOR did use a cutting instrument, a deadly weapon.
An aggravated battery can be committed by 1) intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement; 2) by *239 using a deadly weapon; or 3) by battering a pregnant woman when the offender knows or should know that the victim is pregnant. In the instant case, the only means by which an aggravated battery was charged in the above described count and the only means by which the state, at trial, attempted to prove that an aggravated battery took place with respect to this count, was through the use of a deadly weapon, to wit: the knife which Waits pulled out during his attack on Salley. The jury, however, in finding that Waits was guilty of aggravated battery as charged in the information, made the further finding on the verdict form with respect to this count that "the Defendant did not carry, display, use, threaten to use or attempt to use a Deadly Weapon." Upon the jury's finding that a deadly weapon was not used, the trial court should have granted Waits' motion to have his conviction on this count reduced to simple battery. See Cuevas v. State, 741 So.2d 1234 (Fla. 5th DCA 1999) (an inconsistent verdict is one in which an acquittal on one count negates a necessary element for conviction on another count), rev. denied, 766 So.2d 220 (Fla.2000).
In addition to challenging one of the aggravated battery counts, Waits asserts the trial court erred in refusing to grant his motion for acquittal on the false imprisonment charge. Salley testified that she was held down by Waits between five and ten minutes. In this period he committed a battery against her as well as an aggravated assault by placing the knife to her neck. In McCutcheon v. State, 711 So.2d 1286 (Fla. 4th DCA 1998), the defendant forced a store employee into a stockroom, pinned her on the floor and began choking her in a struggle which lasted 15 minutes. Pursuant to his demands, she opened the store safe and cash register. The court, in applying the Faison[2] test, found that the confinement of the employee was incidental to the robbery and "did not amount to criminal conduct separate from the robbery." Id. at 1289. In the instant case, the five to ten minute fight in which Waits committed both a battery and a separate aggravated assault, did not involve a further confinement separate and apart from these two crimes. These two crimes were committed through the fact that Waits limited Salley's body movement. Because the confinement was incidental to these two other offenses, the conviction for false imprisonment was improper.
We reverse Waits' conviction for false imprisonment, reduce his conviction in count one from aggravated battery to simple battery. We affirm his other convictions and remand for resentencing consistent with Smith v. State, 773 So.2d 1278 (Fla. 5th DCA 2000).
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
THOMPSON, C.J., and PETERSON, J., concur.
NOTES
[1] On remand, the trial court is directed toward this court's decision in Smith v. State, 773 So.2d 1278 (Fla. 5th DCA 2000), in which we held it is improper to impose consecutive prison releasee reoffender (PRR) sentences for offenses which arise out of a single course of conduct.
[2] Faison v. State, 426 So.2d 963 (Fla.1983).